**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: BABY FOOD MARKETING, SALES PRACTICES AND PRODUCTION LIABILITY LITIGATION | MDL No. 2997 |

**RESPONSE TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation Rule 6.2(a), Plaintiffs Jenna Johnson, Riley Bucci, Kelsey Gross, Abbey Johnston, Elaine Lake, Stevie McCartin, Courtney Nemmers, Jessica Scott, Tracy Tankard, Mallory VanDyke, and Lauren Smith (collectively, "RICO Plaintiffs") support the portion of the Movants' motion seeking to consolidate numerous related actions ("Related Actions") pending in at least 14 different district courts to a single district court for pretrial proceedings. However, RICO Plaintiffs request that these Related Actions be transferred to and consolidated before the Honorable Yvonne Gonzalez Rogers in the Northern District of California, before whom five related class actions and several personal injury actions are currently pending.

**ARGUMENT**

**A.      Overview of Claims**

As many complaints around the nation have noted, all Defendants knew their products posed a significant risk to the developing minds and bodies of babies and young children due to the contamination with dangerous levels of arsenic, cadmium, lead, and mercury since at least 2017. Yet they failed to take action to minimize the amount of toxins in their foods designed and marketed for consumption by young children, toddlers, and infants.  And Defendants continued to warrant, promise, represent, mislead, label, and/or advertise that their baby food products are free

1

of any heavy metals or unnatural ingredients by making assurances that the foods are natural, pure, healthy, and safe for infant consumption.

But Defendants' actions and inactions went beyond individual marketing and sales decisions. Each also engaged in a coordinated scheme to defraud. Baby food is big business and these companies feared that billions of dollars of revenue might slip away if they took the precaution, time, and necessary steps to get their products into healthy and safe-for-consumption baby food. So, Defendants cut corners, covered up their schemes, and have failed to recall their products or stop their campaign of lies and misrepresentations. Then, once their food fraud was exposed to the public, Defendants also engaged in additional fraudulent acts to cover up, conceal, and continue their ongoing schemes to defraud. As Congress began to investigate Defendants' wrongdoing in late 2018, Defendants turned to one of Big Tobacco's proven tricks: creating a seemingly independent and pro-consumer entity that suggested they were actually committed to stopping the very fraud they were directing and perpetrating. This new entity was called the Baby Food Council. Its founding members included Beech-Nut, Campbell (Plum's parent company), Gerber, Hain, and Nurture. The Baby Food Council was created in January 2019 only after the release of several independent reports and the beginning of congressional investigations. It was put together quickly as a front organization by Defendants to mislead and deflect attention away from their ongoing fraud. Had those reports not been issued, the Council would never have been created. And even then, from October 2019 to present, nothing has changed. The Council and Defendants have not alerted purchasers that their food is contaminated, nor have they corrected their false advertising, recalled any of their defective products, or disproven the allegations that they are engaging in food fraud.

When confronted by the U.S. House of Representatives regarding the heavy doses of these toxins in these baby foods, Defendants boasted that their products conformed with regulations. But Defendants were well aware there were no such regulatory standards because the FDA had not determined that any level of lead, cadmium, or mercury were safe in baby foods and snacks. Each Defendant used its membership in the Baby Food Council as a pretext for not adopting standards for baby food manufacturing. Each Defendant did not disclose that it was co-opting the push for FDA standards by promising baby food manufacturers would regulate themselves and work to adopt food standards. Each Defendant worked to defeat the adoption of FDA standards using the Baby Food Council as an instrument to do so.

Due to these illicit schemes to defraud, RICO Plaintiffs not only assert similar state law warranty and consumer protection claims but also claims under 18 U.S.C. § 1962(c) and (d) (civil RICO) based on Defendants use of the Baby Food Council as an enterprise, or in the alternative, forming an association-in-fact enterprise with the Baby Food Council and/or the other RICO Defendants.

**B.    Centralization by Manufacturer Defendant is not Efficient and a Conservation of Resources**

RICO Plaintiffs believe some parties may suggest that centralization by Defendant is more appropriate than centralizing all Related Actions related to heavy metals in Defendants' baby food products. However, such an approach ignores two basic facts about the industry: (1) Plaintiffs purchased from multiple manufacturers, (2) Defendants engaged in coordinated behavior to stave off regulation and mislead the public.

If defendant-by-defendant centralization occurs, a plaintiff who purchased products from multiple defendants will have her RICO claims potentially sent to six different locations. All eleven RICO Plaintiffs purchased products from multiple Defendants. It is very likely that most

3

parents, like RICO Plaintiffs, purchased food products from several of the Defendants, not merely one of them. This is especially true because the baby food products at issue are varied: some are meals and some are snacks. Thus, isolating each defendant in a separate lawsuit ignores the practical reality of how these products were purchased, resulting in widespread inefficiencies. A plaintiff who lives in Kansas, purchased products from all Defendants, and learned about the internal testing revealing dangerous levels of heavy metals through the Congressional Report would need to take her claims against Plum to the Northern District of California, Gerber in the Eastern District of Virginia, Hain in the Eastern District of New York, Beech-Nut in the Northern District of New York, Nurture in the Southern District of New York, and Campbell in the District of New Jersey. These plaintiffs would respond to six different sets of discovery in piece-meal, rather than coordinated fashion and potentially still need to sit for six different depositions at different times. Similarly, these plaintiffs would need to pay to have their experts on baby food products, heavy metal contamination, and economic loss engage in disclosures and discovery that would overlap.

Moreover, the alleged behavior is not simply isolated defendant-by-defendant processing and marketing decisions. Rather, as noted in RICO Plaintiffs' actions, Defendants worked together through an industry front-group to fend off regulators and mislead consumers. When individual defendants in certain suits are also part of a larger conspiracy that allegedly implicates RICO, Section 1407 centralization is appropriate to avoid overlapping discovery and provide for just and expeditious resolution. *In re Ahern Rentals, Inc., Trade Secret Litig.*, 481 F. Supp. 3d 1355, 1356 (J.P.M.L. 2020); *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378-79 (J.P.M.L. 2017) *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1389-90 (J.P.M.L. 2014) *In re InPhonic, Inc., Wireless Phone Rebate Litig.*, 460 F. Supp. 2d 1380, 1381 (J.P.M.L. 2006); *In re*

*Ocwen Fed. Bank FSB Mortg. Servicing Litig.*, 314 F. Supp. 2d 1376, 1378-79 (J.P.M.L. 2004). Section 1407 proceedings will allow coordinated discovery on common issues as well as discovery on unique issues to proceed concurrently. *In re Dow Chem. Co. Sarabond Prod. Liab. Litig.*, 650 F. Supp. 187, 189 (J.P.M.L. 1986). Because the RICO claims implicates the coordinated actions and inactions of all of these Defendants, Plaintiffs forced to break up their complaints and centralize claims against one manufacturer would still need information from the other manufacturers on the coordinated, illicit scheme to defraud under RICO. Additionally, in each location, Plaintiffs would likely also need third-party discovery related to the creation and work of the Baby Food Council. This repetitive discovery as well as the potential conflicting rulings on the same federal claim necessitate Section 1407 centralization.

### C.     The Northern District of California is the Most Appropriate Court for Centralization.

California also has a strong nexus to the litigation. As the *Kelly* Plaintiffs note, it is important to look at where affected plaintiffs are located as well as the location of defendants. On this metric, California is the most logical location. California has the highest birth rate in the United States with 446,479 births in 2019 (over twice the number of Florida) and approximately 2.4 million children under the age of 5 reside in California.[1]

While some Defendants may have their business headquarters on the East Coast, much of the actual farming of Defendants' ingredients occurs elsewhere—with many fruits and vegetables grown in California or the West Coast of the United States. For example, of the ingredients Nurture sources domestically, well over 75% are grown at least in part on farms on the West Coast

---

[1] Centers for Disease Control and Prevention, National Center for Health Statistics, *National Vital Statistics Reports*, Table 6 (Mar. 23, 2021), https://www.cdc.gov/nchs/data/nvsr/nvsr70/nvsr70-02-508.pdf; U.S. Census Bureau, Quick Facts on Population Estimates July 1, 2019, California, https://www.census.gov/quickfacts/fact/table/CA/PST045219 (approximately 6% of the total population of the estimated 39,572,223 residents).

including in California.[2] Many of the products at issue in these cases are made with organic ingredients. Of the 16,585 organic farms in the United States, almost 20% (3,012) are located in California.[3] Almost two-thirds of the organic vegetable sales value originates in California (~$1.3 billion out of ~$2.1 billion nationwide).[4] Similarly, for berries and non-citrus fruits, California is responsible for almost 74% of organic sales value (~$728 million out of ~$990 million nationwide).[5] Rice is a particularly problematic ingredient and California has the highest rice yields in the nation and the counties with the largest production are in Northern California.[6]



---

[2] Happy Family Organics, *Happy Farms*, https://www.happyfamilyorganics.com/happy-farms/ (last visited Apr. 12, 2021).

[3] U.S. Department of Agriculture, National Agricultural Statistics Service, *2019 Organic Survey* at Table 1 (Oct. 2020), available at https://www.nass.usda.gov/Publications/AgCensus/2017/Online_Resources/Organics/ORGANICS.pdf.

[4] *Id.* at Table 2.

[5] *Id.* at Table 6.

[6] U.S. Department of Agriculture, National Agricultural Statistics Service, *All Rice 2019: Production by County for Selected States*, https://www.nass.usda.gov/Charts_and_Maps/graphics/AR-PR-RGBChor.pdf; U.S. Department of Agriculture, National Agricultural Statistics Service, *2020 Rice Yield: Pounds and Percent Change from Previous Year* (Jan. 12, 2021), https://www.nass.usda.gov/Charts_and_Maps/graphics/ricemap.pdf.



Additionally, one of the Defendants involved in the scheme to defraud, Plum, was founded and located in Emeryville, California. Right after the release of the congressional report and as class action lawsuits were beginning to be filed, Plum filed a Certificate of Surrender with the California Secretary of State surrendering its rights and authority to transact intrastate business in California. But Plum will soon be located in California again; Plum's parent company, Campbell Soup Company, announced on March 31 that sometime this spring it will finalize the sale of Plum Organics to Sun-Maid Growers of California.[7] Sun-Maid is headquartered in Fresno, California.

**D.**   **The Honorable Yvonne Gonzalez Rogers will Effectively and Efficiently Manage This Litigation.**

Currently, there are at least eight Related Actions filed in the Northern District of California. Seven of those are pending in front of Judge Rogers and the remaining case has yet to

---

[7] Mary Ellen Shoup, "Sun-Maid moves into the baby and toddler food space with acquisition of Plum Organics," *Food Navigator-USA.com* (Apr. 1, 2021), https://www.foodnavigator-usa.com/Article/2021/04/01/Sun-Maid-moves-into-the-baby-and-toddler-food-space-with-acquisition-of-Plum-Organics.

be assigned to an Article III judge.[8] Two of these cases are personal injury actions. RICO Plaintiffs support keeping the personal injury actions out of the MDL at this moment given the small number of personal injury cases as well as the different legal and factual claims at issue. However, centralizing all economic loss class actions in front of Judge Rogers would allow judicial administration efficiencies as well as informal coordination between the economic loss and personal injury cases as appropriate.

As this Panel has recently noted, Judge Gonzalez Rogers is an "able jurist who has experience presiding over complex, multi-district litigation." *National Ski Pass Insurance Litig.*, --- F. Supp. 3d ----, 2020 WL 588473, at *2 (J.P.M.L. Oct. 2, 2020). Along with one branch of the ski pass litigation, Judge Gonzalez Rogers has also led *In re Lithium Ion Batteries Antitrust Litig.*, MDL No. 2420, and *In re Air Crash at San Francisco, California on July 6, 2013*, MDL No. 2497.

Dated: April 13, 2021                    Respectfully submitted,

                                         /s/ Ruth Anne French-Hodson
                                         Ruth Anne French-Hodson
                                         Rex Sharp
                                         Ryan Hudson
                                         Sarah Bradshaw
                                         **SHARP LAW, LLP**
                                         5301 W. 75th Street
                                         Prairie Village, KS 66208
                                         (913) 901-0505
                                         (913) 901-0419 fax
                                         rsharp@midwest-law.com
                                         rafrenchhodson@midwest-law.com

                                         Isaac Diel
                                         **SHARP LAW, LLP**

---

[8] *Gulkarov v. Plum, Inc., et al.*, 4:21-cv-00913; *McKeon, et al. v. Plum, PBC*, 4:21-cv-01113; *AG, et al. v. Plum, PBC, et al.*, 4:21-cv-01600; *Mathiesen v. Plum, PBC*, 21-cv-01763; *Pereira v. Campbell Soup Co.*, 21-cv-01767; *Ellison v. Plum, PBC*, 21-cv-0201; *IM v. Plum, PBC, et al.*, 3:21-cv-02066; *Smith v. Plum, PBC, et al.*, 3:21-cv-02519.

6900 College Blvd., Suite 285
Overland Park, KS 66211
(913) 901-0505
(913) 901-0419 fax
idiel@midwest-law.com

*Counsel for Plaintiffs Jenna Johnson, Riley Bucci,
Kelsey Gross, Abbey Johnston, Elaine Lake, Stevie
McCartin, Courtney Nemmers, Jessica Scott, Tracy
Tankard, and Mallory VanDyke*

Keith A. Robinson
2945 Townsgate Road, Suite 200
Westlake Village, CA 91361
Tel: 310.849.3135
Fax: 818.279.0604
keith.robinson@karlawgroup.com

Ruth Anne French-Hodson
**SHARP LAW, LLP**
5301 W. 75th Street
Prairie Village, KS 66208
(913) 901-0505
(913) 901-0419 fax
rafrenchhodson@midwest-law.com

*Counsel for Lauren Smith*